IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MARYLAND

**DIAMOND COMIC DISTRIBUTORS INC.** \*
10150 York Road, Suite 300
Hunt Valley MD 21030-3344         \*

    Plaintiff                          \*     Case No.:

v.                                  \*

**GAMESTOP LTD TEXAS**              \*
Resident Agent:
The Corporation Trust Company       \*
1209 Orange Street
Wilmington, DE 19801                \*

And                                 \*

**GAMESTOP, INC**                   \*
Registered Agent:
C T Corporation System Inc
1010 Dale Street North
St Paul, MN 55117                   \*

And                                 \*

**GAMESTOP CORP.**                  \*
Resident Agent:
The Corporation Trust Company       \*
1209 Orange Street
Wilmington, DE 19801                \*

Defendants                          \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Plaintiff Diamond Comic Distributors, Inc., through its attorneys Harold M. Walter, Michael A. Brown, and Offit Kurman P.A., hereby files this Complaint against Defendants Gamestop LTD Texas, Gamestop, Inc., and Gamestop Corp. and states as follows:

1

## THE PARTIES

1. Plaintiff Diamond Comic Distributors, Inc., ("Diamond") is a Maryland Corporation with its principal place of business located in Hunt Valley, Maryland.

2. Defendant Gamestop LTD Texas is a Delaware Corporation with its principal place of business located in Grapevine, Texas. Upon information and belief, Gamestop LTD Texas is a subsidiary of Defendant Gamestop Corp., a Delaware registered corporation with its principal place of business located in Grapevine Texas.

3. Defendant Gamestop, Inc. is a Minnesota Corporation with its registered office located in St. Paul, Minnesota. Upon information and belief, Gamestop Inc., is a subsidiary of Defendant Gamestop Corp., a Delaware registered corporation with its principal place of business located in Grapevine Texas.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter under 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiff and the Defendants, and the amount in controversy exceeds $75,000.00 exclusive interest and costs.

5. Venue is proper in this Court because the last act necessary for the formation of the contract(s) at issue in this case occurred in Maryland and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Maryland.

## COMMON FACTS

6. Plaintiff Diamond is a nationwide distributor of comics, toys, games, and other pop culture-items. Diamond is not a manufacturer of goods, but rather, is solely a distributor of goods. Diamond's business is centered on being a middle distribution entity between vendors, who manufacture the products, and retailers, who sell the products to the public.

7. Diamond operates on a "production to order" basis, meaning it receives purchase orders from retailers, and then places production orders with vendors to begin the manufacturing process. The goods ordered are then specifically manufactured for the Buyer and are generally not suitable for sale to others. Often, the products ordered are specifically designed for one unique retailor, and therefore there are no other available vendors for the products that were ordered and manufactured.

8. In order to submit its production orders to vendors to begin manufacturing, Diamond is required to pay some or all of the cost or become obligated for the cost of the goods charged by the manufacturer in advance (*i.e.* before the manufacturer accepts the order and begins manufacturing the product(s)). For that reason, in its agreements with retailers, Diamond does not permit cancellation of submitted and accepted purchase orders since it is unable to recoup the costs once a production order is placed.

9. Gamestop LTD Texas, Gamestop Inc., and Gamestop Corp. (collectively "Gamestop"), claim to be the largest video game retailer in the United States, with over 3,000 retail locations, including many locations in Maryland. In addition to video games, Gamestop also sells comics, toys, games, and novelty items in their retail stores.

10. Beginning in 1997, Gamestop[1] opened an account with Diamond and thereafter entered into an agreement or series of agreements to purchase goods from Diamond to be sold in Gamestop's retail stores. Gamestop's account with Diamond was initiated by Gamestop completing a Diamond Account Application agreement, in which Diamond and Gamestop agreed to terms of future sales. Pursuant to that agreement and industry practice, Gamestop agreed that

---

[1] At that point in time Gamestop went by the name Babbage's. Babbage's maintained an account with Diamond until the name was changed in 2006 after which the same account continued under the Gamestop name.

3

all orders submitted to Diamond become binding upon Diamond's acceptance and cannot thereafter be cancelled or reduced by Gamestop.

11. For roughly 25 years, the parties have transacted millions of dollars in goods based on that agreement and practice. Gamestop would issue a purchase order to Diamond for a specific product, Diamond would accept that purchase order via email, phone call, or other confirmation and proceed to order that product from the manufacturer on a non-refundable basis. Diamond sales employees would also update Gamestop on status of orders as they were being manufactured.

12. Until recently, Gamestop had never requested, and Diamond had never agreed to cancel accepted orders, with the possible exception of small quantities of items that may have been received after a specific deadline such as holiday items received after the holiday or a similar unique circumstance. In each such instance, the cancellation for these immaterial amounts only occurred with Diamond's consent.

13. According to purchase orders submitted to Diamond, Defendant Gamestop LTD Texas is the corporate entity that submits the order. Gamestop, Inc. is the entity that is listed to receive the goods once manufactured. Diamond would submit its invoices to Gamestop, Inc. and those invoices would be paid by Gamestop LTD Texas.

14. During the course of their relationship, including the purchase orders at issue in this Complaint, all purchase orders from Gamestop were submitted to Diamond's headquarters in Maryland. Diamond would then submit its production orders from its Maryland headquarters.

15. Beginning in April of 2022, Gamestop began sending Diamond emails attempting to cancel certain accepted purchase orders that were not yet fulfilled (*i.e.* delivered). This included a list of 87 previously submitted and accepted purchase orders, with a total contract price of in excess of $950,000.00.

16. In response to the purported cancellations, Diamond representatives indicated to Gamestop that the products at issue were already ordered and paid for by Diamond (or that Diamond had partially paid for and was obligated to pay the full price for those goods). Diamond reminded Gamestop that pursuant to the agreement(s) and/or decades long course of dealings between the parties, accepted orders were not subject to cancellation without consent from Diamond. Gamestop nonetheless confirmed that it did not intend to accept or pay for the products.

17. Shortly thereafter, employees of Gamestop began requesting information from Diamond about its other outstanding orders, seeking a full accounting of what Gamestop had previously ordered from Diamond.

18. After that information was provided to Gamestop, on June 14, 2022, Gamestop submitted a purported "cancellation and reduction" demand to Diamond which either entirely cancelled 105 additional outstanding accepted purchase orders or substantially reduced the number of products to be purchased pursuant to those accepted purchase orders. For each of these products, Diamond had already submitted production orders to vendors, and had paid the upfront costs for production, and/or had become fully obligated to pay for the products. Diamond confirmed to Gamestop that those orders were therefore non-cancellable. The contract price of these additional cancellations and reductions were in excess of $1.8 million, bringing the total attempted cancellations and reductions to more than $2.8 million.

19. Gamestop attempted to cancel these confirmed orders with the knowledge that Diamond had already placed production orders and was fully obligated to pay for the items for which Gamestop had contractually agreed to accept and pay.

20. The purchase orders were non-cancellable both under the parties' agreement(s), pursuant to the course of dealings, and in equity, and Diamond is entitled to the full value of the cancelled orders.

## COUNT I
### (Anticipatory Repudiation., Md. Code Ann., Com. Law § 2-610)

21. Diamond incorporates herein by reference the allegations contained in paragraphs 1-20 of this Complaint.

22. Both Diamond and Gamestop are Merchants as defined in Md. Code Ann., Com. Law § 2-104 as they both regularly deal in goods, specifically comics, games, toys, and other items that are at issue in this litigation.

23. The products that are subject to the purchase orders submitted by Gamestop are future goods within the meaning of Md. Code Ann., Com. Law § 2-105, and therefore the purchase orders submitted by Gamestop are considered contract(s) to purchase and/or sell that were accepted by Diamond.

24. Pursuant to those contract(s) to purchase and/or sell, each individual purchase order submitted by Gamestop was a contractual agreement wherein Diamond was obligated to procure the goods from manufacturers and to subsequently distribute those goods to Gamestop. In return, Gamestop was contractually obligated to accept those goods and pay the agreed upon price for Diamond's procurement.

25. For each of the approximately 192 purchase orders at issue, Gamestop submitted the purchase order(s) with knowledge that it would induce Diamond to seek procurement of the specified goods from manufacturers. In strict reliance upon each of the purchase order(s) submitted by Gamestop, Diamond accepted those purchase orders and submitted production orders

to manufacturers, paid the upfront costs for their manufacture, and to the extent the full cost was not already paid, became liable on a non-cancellable basis for the full cost to the manufacturer.

26. Gamestop subsequently repudiated each of those contracts to purchase and/or sell by notifying Diamond that it did not intend to fulfil its contractual obligation to accept the goods and the pay the agreed upon price for their procurement.

27. In response to that repudiation, Diamond justifiably demanded in writing via email that Gamestop rescind its repudiation and agree to perform its contractual obligation to accept the goods and remit payment to Diamond. More than thirty (30) days have passed since Diamond's demand and Gamestop has failed to give any assurance that they will perform and instead, has maintained that they have no intention of performing.

28. Gamestop's refusal to perform its contractual obligations has substantially impaired the value of Diamond's contractual performance, causing damages in excess of $2.8 million. Pursuant to Md. Code Ann., Com. Law § 2-610, Diamond is entitled to all available remedies for breach under the Md. Code Ann., Com. Law §§ 2-703 – 2-711, including damages for the price of the goods under Md. Code Ann., Com. Law § 2-709.

WHEREFORE, Plaintiff hereby requests that the Court enter a judgment in their favor and against Defendants jointly and severally for damages in excess of $2,800,000.00 as relief for Defendants' breaches of their contract(s) with Plaintiff, plus incidental damages, and such further or alternative relief as the Court considers just.

## COUNT II
### (Breach of Contract)

29. Diamond incorporates herein by reference the allegations contained in paragraphs 1-28 of this Complaint.

30. Diamond and Gamestop entered into an Account Application Agreement (the "Agreement") prior to any transactions conducted between the parties.

31. The Agreement provides terms and conditions for all future transactions between the parties.

32. Pursuant to the Conditions of Sale terms of the agreement, Gamestop agreed that all orders it submitted to Diamond would be "binding upon Diamond's acceptance and cannot thereafter be cancelled or reduced by [Gamestop]."

33. Pursuant to the Agreement, Gamestop also agreed that failure to pay for the merchandise it ordered would be considered a breach of the Agreement and agreed that it would be liable for "any expenses" Diamond incurs to collect past due amounts, "including but not limited to attorney's fees" and costs connected with Diamond's efforts to recover for Gamestop's breach(es) of the Agreement.

34. Gamestop also agreed that invoices not paid within terms will be subject to a late payment fee of 1.5% per month on the outstanding balance.

35. In violation of the Agreement, Gamestop has purported to cancel and/or reduce approximately 192 purchase orders that were accepted by Diamond. In reliance on Gamestop's binding purchase orders and in anticipation that Gamestop would pay in full for the ordered goods, Diamond has suffered and will continue to suffer damages in excess of $2.8 million dollars.

WHEREFORE, Plaintiff hereby requests that the Court enter a judgment in their favor and against Defendants jointly and severally for damages in excess of $2,800,000.00 as relief for Defendant's breach of its contract with Plaintiff, plus any expenses Diamond incurs to collect past due amounts, including but not limited to attorney's fees and costs; plus a late fee of 1.5% per month on all outstanding balances, plus incidental damages, or alternatively seeks specific

performance of its contract with Defendant, and such further or alternative relief as the Court considers just.

## COUNT III
### (Detrimental Reliance)

36.   Diamond incorporates herein by reference the allegations contained in paragraphs 1-35 of this Complaint.

37.   In submitting the approximately 192 purchase orders to Diamond, Gamestop made a clear and definite promise to receive and pay for the goods being ordered.

38.   In making their promise to Diamond, Gamestop was directing Diamond to seek manufacture of the goods specified in the purchase order and knew that Diamond would promptly submit its production orders and become liable for the cost of those goods on a non-refundable abasis. This production to order process was the same basis upon which Gamestop and Diamond had conducted business for decades.

39.   Diamond actually and reasonably relied on Gamestop's promise to receive the goods and pay for their procurement as they had in each of Gamestop's purchase orders in the past. Based on that reasonable reliance, Diamond paid the upfront cost for the manufacture of the goods, became liable on a noncancellable basis for any remaining balance of the cost of such goods, and arranged for their shipment and distribution.

40.   Gamestop's repudiation of its promise to receive and pay for the requested goods has caused a detriment that can only be avoided by enforcement of the promise to pay. Diamond has already paid for the goods manufacture and/or has become liable on a noncancellable basis for any remaining balance of the cost of such goods and cannot cancel those orders or otherwise recoup the payment for the manufacture.

WHEREFORE, Plaintiff hereby request that the Court enter a judgment in their favor and against Defendants jointly and severally for damages in excess of $2,800,000.00 as relief for Plaintiff's detrimental reliance on Defendants' promises, plus incidental damages, and such further or alternative relief as the Court considers just.

Respectfully Submitted,

OFFIT KURMAN, P.A.

*/s/ Harold M. Walter*
Harold M. Walter (#03387)
Michael A. Brown (#20814)
300 E. Lombard Street, Suite 2010
Baltimore, Maryland  21202
Telephone:  (410) 209-6448
Facsimile:  (410) 209-6435
Email:    hwalter@offitkurman.com
     michael.brown@offitkurman.com

*Attorneys for the Plaintiff*

4870-2616-5550, v. 2